IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| GOLDBELT WOLF, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | )    1:15cv1269 (JCC/JFA) |
| | ) |
| OPERATIONAL WEAR ARMOR, LLC, | ) |
| | ) |
|     Defendant. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter is now before the Court on the Plaintiff's Motion for Default Judgment [Dkt.10], Defendant's Motion to Set Aside Default [Dkt. 16], and Defendant's Objections to the Magistrate Judge's Proposed Findings of Fact and Recommendation [Dkt. 18].

**I. Background**

Plaintiff Goldbelt Wolf, LLC ("Plaintiff") filed this action for breach of contract against Defendant Operational Wear Armor, LLC ("OpWear" or "Defendant")on October 2, 2015. On October 27, 2015, a summons was issued for service on Defendant in Indianapolis, Indiana but was returned unexecuted on October 27, 2015.  (Summons Issued [Dkt. 3]; Summons Returned Unexecuted [Dkt. 4].)  On October 27, 2015, an alias summons was issued for service on defendant in Jacksboro, Tennessee. (Alias Summons [Dkt. 5].)  On November 2, 2015, Sharon Schwartz, a purchasing

1

manager at OpWear, received and signed for a copy of the summons and complaint. (Alias Summons Returned Executed [Dkt. 6].) OpWear did not file a responsive pleading after Ms. Schwartz received the summons.

On December 1, 2015, this Court entered an order instructing plaintiff to immediately obtain an entry of default from the Clerk of Court pursuant to Federal Rule of Civil Procedure 55(a), and subsequently file a motion for default judgement. (Order [Dkt. 8].) On December 1, 2015, Plaintiff filed its request for entry of default. (Entry of Default [Dkt. 9].) The Clerk of Court entered the default and the Plaintiff then filed a motion for default judgment on December 9, 2015. (Pl.'s Mot. for Default Judgment [Dkt. 10].) On December 18, 2015, the Magistrate Judge held a hearing on the motion at which no one appeared on behalf of the defendant, and entered a Report and Recommendation recommending a default judgment in favor of the plaintiff. (Report and Recommendation [Dkt. 14], at 2.)

OpWear was originally made aware that a lawsuit had been filed against it by an e-mail communication from Plaintiff's General Counsel, Philip Livingston, to OpWear's CEO, Wade Lemon, on December 23, 2015. (Second Lemon Decl., Def.'s Ex. D [Dkt. 22-1].) This e-mail conversation included an attached copy of the complaint Plaintiff had filed against OpWear. However, OpWear contends that it did not find out that

2

Plaintiff had attempted to serve it with the lawsuit until it received the Magistrate Judge's Report and Recommendation on December 23, 2015.  (Def.'s Resp. [Dkt. 22] at note 1.)

OpWear filed its motion to set aside default [Dkt. 16], as well as an accompanying memorandum of law [Dkt. 17], on January 4, 2016. Plaintiff filed its opposition on January 19, 2016 [Dkt. 21].  OpWear filed its reply brief [Dkt. 22] on January 26, 2016, and oral argument was heard on February 4, 2016.

## II. Legal Standard

The district judge shall make a *de novo* determination of those portions of the Magistrate Judge's Report and Recommendation to which objections are made.  Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C).  Under *de novo* review, "[t]he district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions."  Fed.R.Civ.P. 72(b)(3).

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed.R.Civ.P. 55(a).  A defendant in default admits the factual allegations in the complaint. *See* Fed.R.Civ.P. 8(b)(6)("An allegation – other than one relating to the amount of damages – is admitted if a

3

responsive pleading is required and the allegation is not denied."); *see also, GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F.Supp. 2d 610, 612 n.3 (E.D. Va. 2003)("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim.")

Rule 55(c) of the Federal Rules of Civil Procedure provides that "the court may set aside an entry of default for good cause shown and, it may set aside a final default judgment in accordance with Rule 60(b)." "The disposition of motions made under Rules 55(c) and 60(b) is a matter which lies largely within the discretion of the trial judge." *Consol. Masonry & Fireproofing Inc. v. Wagman Constr. Corp.*, 383 F.2d 249 (4th Cir. 1967). The Fourth Circuit has established that:

> When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.

*Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006). The Fourth Circuit has also "repeatedly expressed a strong preference that, as a general matter, defaults should be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.* 616 F.3d 413, 417 (4th Cir. 2010).

4

As a jurisdictional matter, a court cannot enter default judgment against a defendant until that defendant has been brought within the court's jurisdiction by adequate service of process. *Armco, Inc. v. Penrod-Stauffer Bldg. Systems, Inc.*, 744 F.2d 1087, 1089 (4th Cir. 1984). Pursuant to Federal Rule of Civil Procedure 4(h), a corporation, partnership, or other unincorporated association may be served in a judicial district of the United States in the manner prescribed in Rule 4(e)(1) for serving an individual or by delivering a copy of the summons and complaint to an officer, managing, or general agent, or any other agent authorized by law to receive service of process. Rule 4(e)(1) provides that an individual may be served in a judicial district of the United States "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed.R.Civ.P. 4(e)(1).

### III. Analysis

Defendant OpWear moves to set aside the default on the grounds that OpWear was never properly served. In this case, service could have been effected by following the law of either Tennessee or Virginia. *See Sams v. Heritage Transp., Inc.*, 2013 U.S.Dist. LEXIS 45906, *5 (D.S.C.). The Court will first consider whether service of process was effective under the laws of Tennessee before turning to the laws of Virginia.

5

A. <u>Service of Process Under Tennessee Law</u>

Tennessee Rule of Civil Procedure 4.04(3) governs the service of process on unincorporated associations including limited liability companies. It provides that service can be effected "by delivering a copy of the summons and of the complaint to a partner or managing agent of the partnership or to an agent authorized by appointment or by law to receive service on behalf of the partnership or association." Tenn.R.Civ.P. 4.04(3). In determining whether an employee can validly accept service of process on an organizational defendant, the Supreme Court of Tennessee has held:

> [S]ervice of an organizational defendant may "be made upon a representative so integrated with the organization that [s]he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable, and just to imply the authority on h[er] part to receive service."

*Hall v. Haynes*, 319 S.W.3d 564, 575 (Tenn. 2010)(quoting *Garland v. Seaboard Coastline R.R. Co.*, 658 S.W.2d 528, 531 (Tenn. 1983). In *Garland v. Seaboard Coastline Railroad Company,* the Supreme Court of Tennessee held that a freight agent could accept service of process for a railroad company when the freight agent "was the 'chief agent' in charge of defendant's activities" in the county where the plaintiff brought suit. 658 S.W.2d at 530. In *Hall*, however, the Supreme Court of Tennessee

6

held that the receptionist at a doctor's office did not have the implied authority to accept service of process despite the fact that "she signed for subpoenas for medical records as part of her job duties." *Hall*, 319 S.W.3d at 575. *Hall* goes on to explain that in order for the court to determine that an employee has implied authority to accept service of process:

> The record must contain evidence that the defendant intended to confer upon [the] agent the specific authority to receive and accept service of process for the defendant. Acting as the defendant's agent for some other purpose does not make the person an agent for receiving service of process.

*Id.* at 573 (internal quotations omitted).

In the instant case, Plaintiff argues that Ms. Schwartz was a representative sufficiently integrated with OpWear's organization to know what to do with the summons and the complaint upon receiving them. It points to the fact that Ms. Schwartz is listed as the point of contact for questions relating to "Electronic Business," "Government Business," and Past Performance – Alternate" on OpWear's System for Award Management ("SAM") page. (Pl.'s Mem. in Opp. at 4-5.) However, the fact that Ms. Schwartz is listed as one of the primary points of contact for business inquiries on OpWear's SAM page does not make Ms. Schwartz OpWear's agent for receiving service of process. *See Hall*, 319 S.W.3d at 573. Plaintiff does not point to any other evidence "that the defendant intended to

confer upon [the] agent the specific authority to receive and accept service of process for the defendant." *Id.* Because there is no evidence in the record that OpWear intended to confer upon Ms. Schwartz the specific authority to accept service of process, the Court finds that Ms. Schwartz did not have authority to accept service of process for Opwear. Accordingly, Plaintiff has not properly served process on OpWear under Tennessee law.

B. Service of Process Under Virginia Law

Plaintiff argues that even if OpWear was not properly served under Tennessee law, service was effective under Virginia law. (Def.'s Mem. in Opp. at 5-7.) Plaintiff contends that Ms. Schwartz was the proper party to accept service under Virginia law, and that even if she were not, the service was effective under Virginia's curing statute, Va. Code § 8.01-288. The Court disagrees, finding that Ms. Schwartz was not authorized to receive service of process under Virginia Law, and that OpWear has not received service sufficient to satisfy Virginia's curing statute.

1. Ms. Schwartz's Ability to Accept Service under Virginia Law

Va. Code § 8.01-306 governs the service of process against unincorporated associations, orders, or common carriers with their principal offices outside Virginia which transact

business or affairs in the Commonwealth.  It provides:

> [P]rocess may be served on any officer, trustee, director, staff member, or agent of such association, order, or carrier in the city or county in which he may be found or on the clerk of the State Corporation Commission, who shall be deemed by virtue of such transaction of business or affairs in the Commonwealth to have been appointed statutory agent of such association, order, or carrier upon whom may be made service of process in accordance with § 12.1-19.1.

Va. Code § 8.01-306.  Virginia law, like Tennessee, requires that the party seeking to establish the agency relationship must show "that defendant either explicitly or implicitly authorized [the employee] to accept service of process."  *Davies v. Jobs & Adverts Online, GmbH*, 94 F.Supp.2d 719, 722 (E.D. Va. 2000).  Plaintiff cites to *Mas v. Orange-Crush Co.*, 99 F.2d 675 (4th Cir. 1938) as an example of a situation where an employee was deemed to be of sufficient position and responsibility in an organization to imply his authority to accept service of process.  Like *Garland* in Tennessee, *Mas* involved a situation where service of process was accepted by an organization's most senior employee in the location where process was served.

        Plaintiff here has not demonstrated that Ms. Schwartz was the senior employee in the Jacksboro, Tennessee office.  Because Ms. Schwartz was not the senior employee in the location where process was served, and Plaintiff "has presented no evidence to establish that

9

defendant either explicitly or implicitly authorized [Schwartz] to accept service of process in this action," the Court finds that Ms. Schwartz could not validly accept service of process on behalf of OpWear under Virginia law. *Davies,* 94 F.Supp.2d at 722.

### 2. <u>Virginia's Curing Statute</u>

Plaintiff additionally argues that even if Ms. Schwartz could not validly accept service of process on behalf of OpWear, service was effective under Virginia's curing statute, Va. Code § 8.01-288. Virginia's curing statute provides:

> Except for process commencing actions for divorce or annulment of marriage or other actions wherein service of process is specifically prescribed by statute, process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter.

Va. Code § 8.01-288. "By its plain language the statute applies only when 'process' has reached 'the person to whom it is directed.'" *Lifestar Response of Maryland, Inc. v. Vegosen*, 594 S.E.2d 589, 591 (Va. 2004). Just as in federal court a summons must be served with the copy of the complaint to effect service of process, process in the Commonwealth of Virginia requires receipt of both the motion for judgement "*and* the notice issued by the clerk." *Id.* (emphasis in original). "Without either the

notice prepared by the clerk or the copy of the motion for judgment, there is no notice of motion for judgment and no 'process.'" *Id.* Virginia's curing statute "applies only when process has reached the person to whom it is directed." *Id.* (internal quotations omitted).

In the instant case, Plaintiff demonstrates only that OpWear's CEO received a copy of the complaint. Plaintiff introduces no evidence suggesting that OpWear became aware of service of process against it prior to the issuance of the default. The evidence presented suggests that OpWear's CEO learned of the lawsuit from the copy of the complaint e-mailed to him by Plaintiff's general counsel, Philip Livingston. (Second Lemon Decl., ¶ 2.) Plaintiff has shown only that a copy of the complaint reached Mr. Lemon. Plaintiff has not demonstrated that a copy of the summons, and thus "process", ever reached Mr. Lemon or any other appropriate party at OpWear. Accordingly, Virginia's curing statute does not apply.

As Plaintiff failed to effectively serve OpWear, the Court cannot hold OpWear in default. Accordingly, the Court grants the Defendant's Motion to Set Aside Default and denies the Plaintiff's Motion for Default Judgment.

    C. <u>Default Would be Set Aside if Service Had Been Effective</u>

Even if Plaintiff had properly served OpWear, the circumstances in this case would warrant setting aside Plaintiff's default. The Fourth Circuit has announced a "strong preference that, as a general matter, defaults should be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad.,* 616 F.3d at 417. When determining whether or not it should set aside a default, a district court "should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne,* 439 F.3d at 203.

1. <u>Meritorious Defense</u>

The Court "has discretion to determine whether a proffered defense or counterclaim is meritorious." *Bank of Southside Va. v. Host & Cook, L.L.C.,* 239 F.R.D. 441, 445 (E.D. Va. 2007)(citing *Trueblood v. Grayson Shops of Tenn., Inc.*, 32 F.R.D. 190, 196 (E.D. Va. 1963)). In *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp,* The Fourth Circuit held that "[a] meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp,* 843 F.2d

12

808, 812, (4th Cir. 1988)(citations omitted). However, in the next line the Fourth Circuit points out that in evaluating the presence of a meritorious defense, "[t]he underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Id.* (quoting 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2697, p. 531 (2d ed. 1983)).

In support of its motion to set aside the default, OpWear submitted an affidavit by its CEO, Wade Lemon, which included the assertion:

> The invoices at issue in this case are just one component of a long-running and complex business relationship between OpWear and Goldbelt. Opwear has substantial offsets and potential counterclaims against Goldbelt based on research and development work performed on Goldbelt's behalf, expenses incurred in Goldbelt's attempt to reconcile with a customer, and Goldbelt's failed efforts to assist OpWear in winning work."

(Lemon Decl., Def.'s Ex. A [Dkt. 17-1], ¶ 9.) These assertions would not be sufficient to sustain a complaint or counterclaim on their own. However, in light of the Fourth Circuit's strong preference in favor of resolution of cases on the merits, the apparent harmony between the facts suggested by these assertions and the facts as they are alleged in Plaintiff's complaint, and the extreme haste with which OpWear's counsel prepared its

motion to set aside default, the Court finds that they are sufficient to conclude that there exists a reasonable possibility that the outcome of this case at trial would "be contrary to the result achieved by the default." *Augusta Fiberglass Coatings, Inc.*, 843 F.2d at 812, (4th Cir. 1988)(citations omitted).

### 2. Reasonable Promptness

Reasonable promptness in responding to the default is evaluated "in light of the facts and circumstances of each occasion," with wide latitude accorded to the discretion of the trial judge. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Here, OpWear filed its objections to the Magistrate Judge's Report and Recommendation and its motion to set aside default on January 4, 2016, only fourteen business days after entry of the Report and Recommendation on Plaintiff's Motion for Default Judgment. While OpWear admits it was aware that this lawsuit had been filed as a result of the e-mail sent to its CEO on October 12, 2015, it asserts that it was still awaiting service of process, and the formal commencement of the suit, when it received the Magistrate Judge's Report and Recommendations by mail on December 22, 2015. (Second Lemon Decl., ¶¶ 1-2.) OpWear was also unable to secure counsel in this case until January 4,

14

2016, the very same day the instant motion was filed. *Id.* As OpWear filed this motion on the same day its counsel learned of the existence of this case, it certainly acted with reasonable promptness. *See Colleton*, 616 F.3d at 418 (the defendant "acted with the requisite promptness and diligence in seeking to set aside the entry of default when it acted within nine days after its counsel learned of the existence of the case."); *Wainwright's Vacations, LLC v. Pan American Airways Corp.,* 130 F.Supp.2d 712, 718 (D. Md. 2001)(holding a defendant's motion to vacate a default filed one month after the entry of the default reasonably prompt, "[i]n light of its difficulty obtaining counsel. . . .").

### 3. Personal Responsibility

In assessing the level of personal responsibility the defendant bears for falling into default, the court should consider the circumstances surrounding the default and whether the default was primarily traceable to the defendant's actions or oversight by their counsel. In this case, if service of process on OpWear had been proper, this factor would weigh against setting aside the default. OpWear knew that a lawsuit had been filed against it as a result of the October 12 email. OpWear, however, chose not to engage counsel at that time, but waited until it

15

received notice of the Magistrate Judge's Report and Recommendation to seek counsel. (Second Lemon Decl., ¶ 2). OpWear's failure to retain counsel at an earlier stage would not absolve it of responsibility for its failure to file a timely responsive pleading. *See Bank of Southside Va. v. Host & Cook, LLC*, 239 F.R.D. 441, 449 (E.D. Va. 2007); *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F.Supp.2d 710, 726 (E.D. Va. 2011). Additionally, OpWear has not provided any explanation for why Ms. Schwartz failed to forward the summons and complaint to any of OpWear's officers, nor has it provided any evidence that it has any kind of corporate procedures in place to avoid losing or misplacing summonses. Accordingly, if service on Ms. Schwartz were effective, her subsequent loss of the summons and complaint would be fairly attributable to OpWear, and would not absolve it of responsibility for the default. *See Colleton Prep. Acad.*, 616 F.3d at 420. Therefore, had OpWear been properly served, it would be personally responsible for falling into default, and this factor would weigh against setting aside the default.

### 4. <u>Prejudice to Non-Moving Party</u>

In evaluating prejudice to the non-moving party, courts examine whether the delay affected the ability of the non-defaulting party to present their evidence, proceed

16

with trial, or complete discovery. *Vick v. Wong,* 263 F.R.D. 325, 330 (E.D. Va. 2009). Courts also consider whether the delay was used by the defaulting party to collude or perpetrate a fraud. *Id.* Plaintiff claims that it have "been prejudiced in a delay to this action – as well as the obligation to respond to this motion which was (at best) completely avoidable." (Pl.'s Mem. in Opp. at 9.) Apart from this conclusory statement, Plaintiff provides no concrete way in which the delay caused by the default affected their ability to complete discovery, present their evidence, or proceed with trial. Plaintiff also implies that OpWear may use the delay to collude or commit a fraud. (*Id.* at 10.) But Plaintiff does not suggest, and the Court cannot see, where OpWear would have any motive or opportunity to collude or perpetrate a fraud in this case. Accordingly, this factor would weigh in favor of setting aside the default.

### 5. History of Dilatory Action

Plaintiff does not allege that OpWear has a history of dilatory action in this case. This case is still in its infancy, but the Court notes that since receiving the Magistrate Judge's Report and Recommendation, OpWear has timely filed all of its motions and briefs.

Accordingly, OpWear's history in this case, such as it is, would weigh in favor of setting aside the default.

### 6. Alternative Sanctions

In assessing the availability of a sanction less drastic than a default, courts have commonly imposed a monetary sanction, such as a attorney's fees, on the party responsible for the default. *See Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953-954 (4th Cir. 1987); *GNB, Inc. v. Tropex, Inc.*, 849 F.2d 605, 1988 WL 60618, at *2 (4th Cir. 1988); *Flora v. JPS Elastometrics,* 2009 WL 1956495, at *5 (W.D. Va. July 7, 2009).  Plaintiff suggests an award of attorney's fees for time worked on the motion to set aside default as a possible alternative sanction. (Pl.'s Mem. in Opp. at 10.)  However, as all but one of the preceding factors weigh in favor of setting aside the default, and the delay caused by the default was minimal, no sanction would be necessary in this case.

### 7. Balance of Factors

As discussed above, the possibility of a meritorious defense, OpWear's promptness in reacting to the default, the lack of prejudice to Plaintiff, and the lack of a history of dilatory action by OpWear would all lead the court to set aside the default.  Only OpWear's personal responsibility for the default would weigh in favor of maintaining the default and

18

entering a default judgment.  This one factor would easily be outweighed by the other four and the Fourth Circuit's strong preference that cases be adjudicated on their merits rather than resolved through default.  Accordingly, even if Plaintiff had properly served OpWear, the Court would grant OpWear's motion and set aside the default.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Set Aside Default, declines to adopt the Magistrate Judge's Report and Recommendation, and denies the Plaintiff's Motion for Default Judgment. An appropriate Order shall issue.

|  | /s/ |
|---|---|
| February 22, 2016 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |